# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
October 21, 2009 Session

## STATE OF TENNESSEE v. EVELYN COTTON SELF

**Direct Appeal from the Circuit Court for Warren County**
**No. M11116     Don Ash, Judge by Interchange**

---

**No. M2009-00343-CCA-R3-CD - Filed November 9, 2010**

---

Following a jury trial, Defendant, Evelyn Cotton Self, was convicted of driving under the influence (DUI), second offense, a Class A misdemeanor. The trial court sentenced Defendant to eleven months, twenty-nine days with Defendant's sentence suspended and Defendant placed on probation after service of seventy-three days in confinement. On appeal, Defendant argues that (1) the evidence is insufficient to support her conviction; (2) the trial court erred in denying Defendant's request for a jury instruction on involuntary intoxication; (3) the trial court erred in instructing the jury concerning prescription medicines; (4) the trial court erred in excluding the testimony of Defendant's psychologist; and (5) the trial court erred in ordering Defendant to serve seventy-three days in confinement. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Mary M. Little, McMinnville, Tennessee; and Robert Newman, McMinnville, Tennessee, for the appellant, Evelyn Cotton Self.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; and Darrell Ray Jullian, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

Melissa Miller testified that on October 20, 2006, she and her fiancé were traveling from Tullahoma to Knoxville on Hwy. 55, a four lane highway, to attend a football game. Ms. Miller noticed a Cadillac in front of them when the couple drove into Warren County. The Cadillac slowed down "considerably," and Ms. Miller thought the driver was going to turn onto the exit ramp leading to Hwy. 70S. Instead, the vehicle pulled into the emergency lane and drove at a speed of approximately thirty to thirty-five miles per hour before pulling back into the right-hand lane in front of Ms. Miller's vehicle. Ms. Miller stated that another vehicle was beginning to pass her vehicle and the Cadillac when the Cadillac swerved into the left-hand lane in front of the passing car. The passing car moved over to the shoulder of the road in order to avoid hitting the Cadillac. After observing the Cadillac swerve in its lane a number of times, Ms. Miller's fiancé called 911 on the speaker phone.

After the emergency call, the two vehicles entered a stretch of highway with several traffic lights. At the second traffic light, the Cadillac rear-ended a vehicle that was stopped for the red light. Ms. Miller said that the driver, whom Ms. Miller identified at trial as Defendant, got of her vehicle and began stumbling about. The traffic was using the left lane to get around the stopped vehicles, and Ms. Miller was afraid that Defendant was going to be hit by the passing cars.

Officer Brad Myers arrived at the location of the traffic accident involving the Defendant's vehicle. Officer Myers testified that Defendant was "staggering around the area of the accident" and walking in-between the vehicles stopped at the red light. Officer Myers was concerned that Defendant would step in front of a moving vehicle. Officer Myers led Defendant to the shoulder of the road and began to administer field sobriety tests. Officer Myers asked Defendant to stand on one leg. Defendant attempted to do so but fell into Officer Myers. Defendant said that she would do the test if Officer Myers would hold her hand. Officer Myers told her he could not do that, and Defendant responded, "I can't do the test." Officer Myers said that Defendant's speech was slurred and she was "very unsteady on her feet." Defendant told Officer Myers that she had taken her prescription medicine and "was not feeling good." Officer Myers stated that he did not detect an odor of alcohol about Defendant's person.

Officer Myers placed Defendant under arrest for DUI. After reading the Tennessee Implied Consent Advisement Form, Defendant agreed to provide a blood sample. Officer Myers drove Defendant to the emergency room at River Park Hospital where a blood sample was taken. Officer Myers said that the emergency room personnel asked Defendant if she needed medical treatment, and Defendant responded negatively.

Special Agent Jenifer Hall testified that she is employed as a forensic toxicologist by the Tennessee Bureau of Investigation ("TBI"). Special Agent Hall tested Defendant's blood sample for drugs. She detected the presence of bupropion, also known as Wellbutrin, which is generally prescribed to treat depression. Special Agent Hall stated that she could not quantify the level of bupropion in Defendant's system from her testing. The testing also revealed the presence of carisoprodol, a muscle relaxer known as Soma, and its metabolite, meprobamate, a Schedule IV drug. The therapeutic range for meprobamate, or the range normally prescribed by a physician, is approximately two to twenty-six micrograms per milliliter, and Defendant's blood sample for meprobamate was fifteen, or within the therapeutic range. The level of carisoprodol was 4.7 micrograms per milliliter, below the therapeutic range of ten to 40 micrograms per milliliter. Special Agent Hall also detected the presence of metoprolol, generally prescribed under the names Lopressor or Toprol XL for chest pain or high blood pressure. Special Agent Hall said that the level of metoprolol in Defendant's system was within the therapeutic range for that drug.

Special Agent Hall stated that the amount of a particular drug in an individual's system could be within the therapeutic range and still cause impairment based on such factors as the length of time the drug had been taken and the amount of tolerance to the drug. On cross-examination, Special Agent Hall stated that bupropion and carisoprodol are not controlled substances in Tennessee. Special Agent Hall said that she did not test for the presence of lithium. On redirect examination, Special Agent Hall said that either a non-scheduled drug or a scheduled drug can cause impairment either individually or when taken in combination with other drugs, and even when taken within therapeutic levels.

The State rested its case-in-chief, and Defendant presented her defense. Dr. Opless Walker testified that as a clinical pharmacologist, he studies the positive and negative effects of drugs on an individual. Dr. Walker stated that neither buproprion nor metoprolol would have caused impairment in Defendant's driving abilities, and the level of meprobamate was within therapeutic levels. Dr. Walker stated, however, that Defendant's symptoms, as described by Officer Myers and Ms. Miller, were consistent with Defendant experiencing an adverse reaction to lithium. Dr. Walker stated that carisoprodol, bupropion, metoprolol and lithium are not controlled substances, or salts of barbituric acid, or any derivative or compound which may produce hypnotic or somnifacient effects.

On cross-examination, Dr. Walker stated that there is a potential for interaction between bupropion and carisoprodol but not to the extent that the two drugs could not be taken together. Dr. Walker said that the drug carisoprodol warns against operating heavy machinery while taking the drug. Dr. Walker said that some of Defendant's symptoms could have been caused by a combination of lithium toxicity and an interaction between carisoprodol and bupropion, but reiterated that carisoprodol and bupropion would have played a minor role in impairing Defendant's driving abilities.

Dr. Jackie Chapman testified that she is a clinical psychologist with a specialty in psychopharmacolgy. Dr. Chapman stated that she not only treats patients for emotional or mental disorders but also can make recommendations to the patient's medical doctor concerning medications. Dr. Chapman stated that she recommended lithium for Defendant. Dr. Chapman explained that general prescribing practice requires that the lowest effective dose, or 150 milligrams, be initially prescribed in order to monitor for possible toxicity. On October 3, 2006, Dr. Chapman recommended that Defendant take 150 milligrams of lithium for approximately five to seven days. A blood sample was drawn after this period, and it was determined that the level of lithium in Defendant's blood was below therapeutic range. Dr. Chapman, therefore, increased Defendant's dosage from 150 milligrams once a day to 150 milligrams twice a day. Dr. Chapman said that her records indicated that Defendant filled the prescription on October 19, 2006.

Dr. Chapman stated that Defendant visited her on November 4, 2006, and complained of increased confusion, slurred speech, dizziness, and an inability to focus or concentrate. Dr. Chapman said that these symptoms indicated a toxic reaction to lithium, and Defendant was taken off the medicine. Dr. Chapman stated that Defendant did not tell her that she had been arrested for DUI. Dr. Chapman said that she was aware that Defendant took carisoprodol for a back injury. Dr. Chapman had also prescribed bupropion for Defendant for depression.

On cross-examination, Dr. Chapman said that she did not find it odd that Defendant did not mention the DUI on November 4, 2006. Dr. Chapman described Defendant on that day as "quite distressed" and "not functioning very well." Dr. Chapman said that it was her practice to discuss all of the potential side effects from a new drug with her patients, but she did not have a present recollection of discussing the impact of lithium on Defendant's driving ability. Dr. Chapman said, however, on redirect examination that she did not tell Defendant not to drive.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support her conviction of DUI. Defendant submits that the evidence does not support a finding that she was "[u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the nervous system." Defendant acknowledges that her blood test revealed the presence of meprobamate, a Schedule IV drug, in her system but points to Dr. Walker's testimony that she did not take meprobamate directly and that the drug was in her system only because it was a metabolite of Soma.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a

rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Tennessee Code Annotated section 55-10-401(a) provides, in pertinent part:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system. . . .

(b) For the purpose of this section, "drug producing stimulating effects on the central nervous system" includes the salts of barbituric acid, also know as malonyl urea, or any compound, derivatives, or mixtures thereof that may be used for producing hypnotic or somnifacient effects, and includes amphetamine, desoxyephedrine or compounds or mixtures thereof, including all derivatives of phenolethylamine or any of the salts thereof, except preparations intended for use in the nose and unfit for internal use.

Viewing the evidence in a light most favorable to the State, Ms. Miller observed Defendant's erratic driving on October 20, 2006. Ms. Miller stated that Defendant pulled into the emergency lane at a slow rate of speed before pulling back into the right-hand lane. Defendant then pulled into the left-hand lane in front of another vehicle which was forced

onto the shoulder to avoid a collision. Defendant then rear ended a vehicle which was stopped at a red light. Both Ms. Miller and Officer Myers testified that Defendant was staggering around after she exited her vehicle and that she was in danger of being struck by the vehicles driving by the accident scene. Officer Meyers stated that Defendant's voice was slurred, and she told him that she could not take any of the field sobriety tests. Defendant's blood test revealed the presence of meprobamate, a Schedule IV narcotic, carisoprodol, bupropion, and metoprolol. Although all of drugs tested within the therapeutic levels associated with each drug, Special Agent Hall testified that schedule and non-schedule drugs can cause impairment, individually or collectively, even when taken within the therapeutic level.

"'This Court has previously found sufficient evidence to sustain DUI convictions based on a defendant's behavior, prescription medications found in the defendant's systems, and expert testimony.'" *State v. Hollena Arlene West*, No. M2008-02200, CCA-R3-CD, 2010 WL 2787827 (Tenn. Crim. App., at Nashville, July 13, 2010) (quoting *State v. Donna Beatrice Kiser*, No. E2005-02489-CCA-R3-CD, 2006 WL 2076341 (Tenn. Crim. App., at Knoxville, July 27, 2006), *no perm. to appeal filed*) (citing *State v. Albert L. Norton*, No. 03C01-9707-CR-00270, 1999 WL 508654 *1-5 (Tenn. Crim. App., at Knoxville, July 20,1999), *no. perm. to appeal filed* (finding sufficient evidence to sustain the defendant's DUI conviction due to the presence of three types of pain medication, an inability to perform field sobriety tests, and expert testimony regarding the possible effects of the medication); *State v. Kenneth Lee Abbott*, No.02C01-9311-CC-00263, 1995 WL 422810 *1-5 (Tenn. Crim. App., at Jackson, July 19, 1995), *perm. to appeal denied* (Tenn. Dec. 28, 1995) (finding sufficient evidence for a DUI conviction after the Defendant's blood test revealed the presence of two tranquilizer drugs, one being within the therapeutic range and one being well above therapeutic levels).

Defendant argues, without citation to authority, that only those drugs producing stimulating effects on the nervous system that are specifically listed in section 55-10-401(b) may subject a person to criminal liability. *See* Tenn. Ct. Crim. App. R. 10(b) (providing that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court"). Nonetheless, this Court has previously observed that subsection (b) of Tennessee Code Annotated section 55-10-401 "sets forth a non-exhaustive 'laundry list' of drugs which are capable of 'producing stimulating effects on the central nervous system.'" *State v. Marvin Lamar Farmer*, 1986 WL 8849, at *2 (Tenn. Crim. App., at Knoxville, Aug. 15, 1986), *perm. to appeal denied* (Tenn. Dec. 1, 1986).

Defendant presented as a defense that her impairment was due to a adverse reaction to Lithium which the jury, by its verdict, rejected as was their prerogative. Based on our

review, we conclude that a rational trier of fact could find beyond a reasonable doubt the Defendant was guilty of the offense of DUI.

## III. Waiver of Issues

Defendant raises three issues on appeal challenging the trial court's jury instructions and limitations placed on his direct examination of Dr. Chapman. The State argues that Defendant has waived review of these issues when she failed to file a motion for new trial. In her reply brief, Defendant acknowledges that she did not file a motion for new trial but submits that she filed a notice of appeal and "asserted the issues before this Court." Defendant submits that the issues presented in this appeal were raised at trial, in the form of various motions and objections, and Defendant argues that her failure to file a motion for new trial is "harmless error."

The thirty-day filing deadline of a motion for new trial is mandatory, jurisdictional, and may not be extended. *See* Tenn. R. Crim. P. 33(b), 45(b); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). Failure to file a timely motion for new trial will result in the waiver of all appellate issues that would result in the granting of a new trial. *Dodson*, 780 S.W.2d at 780; *State v. Williams*, 675 S.W.2d 499 (Tenn. Crim. App. 1984). Although this court cannot review those grounds upon which a new trial was sought, it may review those issues which would result in dismissal, and sentencing issues. Tenn. R. App. P. 3(e); *Williams*, 675 S.W.2d at 501; *see also State v. Givhan*, 616 S.W.2d 612, 613 n.1 (Tenn. Crim. App. 1980)). None of the issues raised by Defendant on appeal, other than those concerning the sufficiency of the evidence would, if meritorious, result in dismissal of the charges against her. Thus, these issues are waived.

## IV. Sentencing Issues

Defendant argues generally that the trial court erred in its sentencing determinations, submitting only that she is a divorced mother with two dependents, she is gainfully employed, she cooperated with the arresting officer, there were no "narcotic, intoxicant, or scheduled drugs involved," and there was no property damage to the vehicle she hit immediately before her arrest.

The only evidence presented at the sentencing hearing was the presentence report which was introduced as an exhibit without objection. According to the report, Defendant was fifty years old at the time of the sentencing hearing. She reported receiving her high school diploma from Warren County High School in 1976. Defendant was engaged in steady employment from 1974 to 2008, and, at the time of the offense, she was the owner and manager of a rental property company. The presentence report shows that Defendant submitted to a drug screen on November 25, 2008, approximately two weeks before the

sentencing hearing, and tested positive for benzodiazepine, for which she had a valid prescription. Defendant was convicted of adult driving while impaired in 2001. *See* T.C.A. § 55-10-418 (repealed 2003).

At the conclusion of the sentencing hearing, the trial court sentenced Defendant to eleven months, twenty-nine days for her Class A misdemeanor offense. Based upon the presentence report, the circumstances surrounding Defendant's offense, and the fact that she incurred a new charge of DUI on July 4, 2008, the trial court ordered Defendant to serve seventy-three days in confinement after which her sentence was to be suspended and Defendant placed on probation.

"When reviewing sentencing issues ..., the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

Further, misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *See* T.C.A. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. *See State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. T.C.A. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. T.C.A. § 40-35-302(d).

The Tennessee Supreme Court has stated that in misdemeanor sentencing the trial court need not make specific findings of fact on the record, so long as it appears the trial judge considered the principles of sentencing in the code and applicable enhancement or mitigating factors. T.C.A. § 40-35-302(d); *Troutman*, 979 S.W.2d at 274; *State v. Russell*,

10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). The defendant has the burden of establishing suitability for full probation. *Troutman*, 979 S.W.2d at 274; *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997); T.C.A. § 40-35-303(b).

The mandatory sentence for a DUI, second offense, is a fine between $600 and $3500, confinement for not less than forty-five days nor more than eleven months and twenty-nine days in the county jail or workhouse, and a two-year loss of driving privileges. T.C.A. § 55-10-403(a)(1). Thus, "the only function of the trial court [is] to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." *State v. Combs*, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996).

We observe that to the extent that the trial court relied upon a new charge of DUI in the absence of a finding by a preponderance of the evidence that Defendant had actually committed the offense, such reliance was misplaced. Before a sentencing court may rely upon the defendant's incursion of new charges not yet reduced to convictions, the court must find by a preponderance of the evidence that the defendant committed the offenses with which he has been charged. *State v. Joseph Daniel Drew*, No. E2009-01662-CCA-R3-CD, 2010 WL 2836100, at *4 (Tenn. Crim. App., at Knoxville, July 20, 2010) (citing *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn.2000) (stating that "facts relevant to sentencing must be established by a preponderance of the evidence")). In this case, the trial court made no finding beyond its observation that Defendant had been recently charged with DUI. Thus, the trial court's findings fell short of a conclusion by a preponderance of the evidence.

Nonetheless, based on our review, we conclude that the record supports the trial court's imposition of seventy-three days of confinement, and Defendant has not demonstrated on appeal that her sentence is improper. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE